FAYETTE NO. 1, INC., d/b/a Fayette Caring Center, a Missouri corporation,

and

Carrollton No. 1, Inc., d/b/a Carrollton Nursing Center, a Missouri Corporation, Appellants,

v.

MISSOURI DEPARTMENT OF SOCIAL SERVICES,

and

Missouri Division of Medical Services of the Department of Social Services,

and

Donna Checkett, Director of the Division of Medical Services of the Department of Social Services

and

Victoria Therien, Director of the Institutional Reimbursement Unit of the Division of Medical Services of the Department of Social Services, Respondents.

No. WD 46268.

Missouri Court of Appeals, Western District.

May 11, 1993.

Thomas Cummings, Diane E. Felix, Lisa Wood Brickey, Armstrong, Teasdale, Schlafly & Davis, St. Louis, for appellants.

Karolin Solorzano, Jefferson City, for respondents.

Before ULRICH, P.J., and BRECKENRIDGE and HANNA, JJ.

ULRICH, Judge.

Fayette No. 1, Inc., and Carrollton No. 1, Inc., ("Appellants") appeal the judgment of the trial court denying their motion for preliminary and permanent injunctive relief as well as other relief sought against the Missouri Department of Social Services and its Division of Medical Services (DMS). This litigation arose because DMS withheld reimbursement funds from Appellants for Medicaid services provided by Appellants. DMS determined that Appellants had been overpaid for providing Medicaid services in the past and withheld funds to recoup overpayments. Appellants contend the trial court erred in denying the injunctive relief and other relief they sought because (1) DMS's own regulations did not authorize it to withhold the Medicaid payments and, therefore, (2) the trial court had subject

matter jurisdiction over the litigation. The judgment of the trial court is affirmed.

Appellants are corporations duly organized and existing under the laws of the state of Missouri. Fayette No. 1, Inc., operates the Fayette Caring Center, and Carrollton No. 1, Inc., operates the Carrollton Nursing Center. Both the Fayette Caring Center and the Carrollton Nursing Center are long-term health care facilities for the aged, chronically ill, and others in need of long-term health care. The Missouri Department of Social Services and its Division of Medical Services are agencies of the state of Missouri. DMS is responsible for administering the Missouri Title XIX (Medicaid) Program. DMS's authority includes making payments to health care providers under the medical assistance program.

In June of 1990, Appellants and DMS entered into agreements assigning to Appellants the Title XIX Nursing Home Provider Agreements previously executed by the prior owner of the Fayette and Carrollton facilities. Pursuant to the agreements, DMS agreed to pay, and Appellants agreed to accept, reimbursement "as determined in accordance with State law and regulations in effect as of the date of this agreement" for the medical services rendered by Appellants to clients of DMS. The effective date of the assignment was May 1, 1990.

DMS sent letters dated August 15, 1990, to Appellants notifying them that it had reduced the Medicaid per diem reimbursement rates for their facilities as determined by an audit made in accordance with 13 CSR 70–10.010(7)(b)4. DMS stated that the rate adjustment was both retroactive to July 12, 1986, and applicable to all future payments. As a result of the retroactive rate adjustment, DMS claimed it had overpaid the Fayette and Carrollton facilities $97,582.02 and $75,386.76, respectively, for the period July 12, 1986, through June 30, 1990. DMS declared Appellants could either pay these amounts to DMS directly, or DMS would reduce or eliminate future Medicaid reimbursement payments to Appellants until the overpayments were recovered. DMS further notified Appellants of their right to appeal the rate adjustment under the provisions of sections 208.156 and 621.055, RSMo 1986, within thirty days of the date of the letters.

On or about September 14, 1990, Appellants mailed petitions to the Administrative Hearing Commission ("Commission") by which they sought to appeal the decision of DMS expressed in DMS's August 15, 1990, letters. The Commission received and filed the petitions on September 18, 1990. On December 13, 1990, the Commission dismissed the petitions as untimely filed. Because the petitions were not received by the Commission within thirty days of the date of the August 15, 1990, letters as required by section 208.156.8, the Commission found it lacked subject matter jurisdiction over the petitions.

Appellants filed a verified petition and motion for preliminary and permanent injunction in the Circuit Court of Cole County on February 15, 1991. The circuit court denied the motion for preliminary injunction on March 21, 1991, the docket sheet entry stating, "Cause again considered; Motion for Preliminary Injunction denied." Appellants filed a motion for summary judgment in May of 1991. On November 13, 1991, both parties agreed to waive a trial by jury and consented to the submission of the case upon a stipulation of the uncontested facts previously filed by the parties as well as the various memoranda of law and affidavits submitted by both sides. On January 14, 1992, the circuit court again denied Appellants' motion for injunctive relief, its docket sheet entry stating, "Cause considered. Plaintiffs' Motion for Prelminary [sic] and Permanent Injunction, denied." Appellants appeal the January 14, 1992, judgment.

■ Appellants did not timely file their appeal with the Commission. Section 208.-156.8, RSMo 1986, provides that

Any person authorized under section 208.153 to provide services for which benefit payments are authorized ... and who is entitled to a hearing ... shall have *thirty days* from the date of mailing or delivery of a decision of the department of social services or its designated division in which to file his petition

for review with the administrative hearing commission.

(emphasis added). The letters sent by DMS to Appellants stated that Appellants had until thirty days after the date of the letters in which to file their appeals. The letters were dated August 15, 1990. The Commission did not receive Appellants' petition until September 18, 1990, past the thirty-day time limit imposed by the statute and the letters.

■ The failure to comply with the statutory time limitations for appeal from an administrative agency decision, whether to another administrative body or to a circuit court, results in the lapse of subject matter jurisdiction and the loss of right of appeal. *Community Federal Sav. & Loan Assoc. v. Director of Revenue*, 752 S.W.2d 794, 799 (Mo. banc), *cert. denied*, 488 U.S. 893, 109 S.Ct. 231, 102 L.Ed.2d 221 (1988); *Casey v. Department of Social Servs.*, 727 S.W.2d 462, 463 (Mo.App.1987). Appellants' failure to file a timely appeal with the Commission divests both the Commission and the circuit court of subject matter jurisdiction over the case.

■ Appellants' subsequent attempt to secure injunctive relief from the circuit court violated the exhaustion of administrative remedy doctrine, which requires that all administrative remedies be exhausted before a court has jurisdiction to give injunctive relief. *Boot Heel Nursing Center, Inc. v. Missouri Dep't of Social Servs.*, 826 S.W.2d 14, 16 (Mo.App.1992). Appellants argue, however, that the trial court had subject matter jurisdiction to hear their cause because Appellants were attacking a void administrative order through their petition for injunctive relief and were therefore permitted to bypass administrative channels and proceed directly to the circuit court.

Appellants contend that DMS lacked authority to withhold Medicaid payments from them because the actions of DMS in attempting to recoup overpayments made during the period July 12, 1986, to June 30, 1990, as announced in the August 15, 1990, letters were taken pursuant to a rule (13 CSR 70–10.010(7)(B)4) which had been rescinded effective July 1, 1990. The essence of Appellants' claim is that DMS cannot apply 13 CSR 70–10.010(7)(B)4 to them after the rule's rescission.

This court addressed a similar claim in *Boot Heel*. As in the case at bar, the appellants in *Boot Heel*, three nursing homes, challenged the validity of the application by DMS of 13 CSR 10.010 after the rule had been rescinded. Also, as in this case, the *Boot Heel* appellants sought relief in the circuit court prior to exhausting all administrative remedies.[1]

■ This court upheld the judgment of the trial court dismissing the *Boot Heel* appellants' petitions for declaratory and injunctive relief for failure to exhaust administrative remedies. *Id.* 16–17. While noting that an exception to the exhaustion requirement is recognized under some circumstances where a direct constitutional challenge to a rule or regulation of a state administrative agency is the only issue presented,[2] this court found that a challenge to the application of a rule or regulation does not involve a constitutional challenge "in an appellate jurisdictional sense." *Id.* at 16. Such a challenge does not invoke an exhaustion exception but instead "requires exhaustion of administrative remedies to develop a factual record for review." *Id.*

■ Appellants acknowledge the *Boot Heel* decision but argue that they are relying on an exception to the exhaustion of administrative remedies doctrine not mentioned in the *Boot Heel* case. Appellants contend that section 536.100, RSMo 1986, affords another exhaustion exception because "[s]ection 536.100 does not require a

---

1. The appellants in *Boot Heel* actually pursued injunctive relief from the circuit court and review before the Administrative Hearing Commission simultaneously.

2. The *Boot Heel* court also mentioned a second exception to the exhaustion requirement which is not relevant to the immediate case. The court noted that section 536.050.1, RSMo 1986, grants to the courts the power to render declaratory judgments respecting the validity of administrative rules and the threatened application of those rules without the necessity of first seeking review through administrative channels. The court found that the appellants were not able to invoke this exception. *Id.* at 17.

person attacking a void administrative order to exhaust all administrative remedies, but rather allows that person to attack the void order at any time or in any manner."

Appellants misconstrue section 536.100. Section 536.100 provides that

Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof, as provided in sections 536.100 to 536.140, unless some other provision for judicial review is provided by statute; provided, however, that nothing in this chapter contained shall prevent any person from attacking any void order of an agency at any time or in any manner that would be proper in the absence of this section.

Section 536.100 does not create another exception to the exhaustion requirement. It merely assures the continued validity of any exception that would be recognized in the absence of this section. Thus, if an allowed exception exists, such as those mentioned in the *Boot Heel* opinion, section 536.100 will not revoke it, but in doing so section 536.100 does not provide any new exceptions.

The failure of Appellants to comply with the statutory time limitations for appealing DMS's decision deprived the Commission and, consequently, the circuit court, of subject matter jurisdiction to hear Appellants' petition. Because Appellants were required to exhaust all administrative remedies before proceeding to the circuit court, they could not seek to avoid the recoupment by DMS of the alleged overpayments by attempting to obtain injunctive relief from the circuit court. Accordingly, the trial court correctly denied Appellants' petition for preliminary and permanent injunctive relief and other relief sought.

The judgment of the trial court is affirmed.

All concur.