Donna **BRUTLEY**, Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

No. 96–SC–1076–DG.

Supreme Court of Kentucky.

April 16, 1998.

Daniel T. Goyette, Frank W. Heft, Jr., J. David Niehaus, Office of the Jefferson District Public Defender, Louisville, for Appellant.

A.B. Chandler, III, Attorney General, John R. Cox, Assistant Attorney General, Frankfort, for Appellee.

STEPHENS, Chief Justice.

There are two issues presented in this case. The first is whether a district judge (who is not a successor judge) may employ contempt power, to punish violation of another judge's order entered in a different division of the court and in a different case. The second issue is whether a district judge is bound to obey an administrative order of the Chief District Judge which requires a grant of continuances in "instant appointment cases."

On January 27, 1995, Donna Brutley, appellant, was convicted in Division 101, the traffic division of the Jefferson District Court, of driving on a suspended license. She was represented by a public defender in this matter and was ordered to pay two-hundred dollars for that representation. Subsequently, eight bench warrants were issued against appellant for failure to remit the two-hundred dollar payment.

On March 29, 1996, appellant appeared before the Honorable Joseph Ray in Division 105, the felony examining division of the Jefferson District Court, on a charge of possession of a forged instrument. Prior to taking a plea from appellant Judge Ray sent the sheriff to find the "first public defender" available, to represent appellant on the felony charge. Consequently, an "instant appointment" was made, resulting in Sue Martin, of the Public Defender's office, representing appellant.

The previously issued bench warrants were brought up for the first time by Judge Ray after the "instant appointment" was made. Martin asked to be granted a continuance on that matter, in accordance with an order of the Chief District Judge mandating continuances when requested in cases of instant appointments. Judge Ray refused to grant a continuance, but gave Martin the opportunity to withdraw from the case. Had Martin chosen to withdraw, the case would have been passed for thirty (30) days during which time appellant would have been taken into custody.

For ethical reasons, Martin chose not to withdraw and instead went along with the plea agreement on the forged instrument charge. Subsequently, appellant was found to be in contempt for failing to pay the two-hundred dollar public defender fee and sentenced to thirty (30) days in jail.

The Jefferson Circuit Court affirmed the sentence holding that "[t]he Chief Judge . . . is purely an administrative position. No other district judge including the Chief Judge has the authority to 'bind the hands' of another district judge by issuing any order affecting the legal business of their Court."

We agree with the Circuit Court on this particular issue, but reverse on other grounds.

## I. JURISDICTION

■ Appellant's first argument in this regard is that the structure and operation of Kentucky's Court of Justice divested the district judge of jurisdiction over the issue of appellant's failure to pay the public defender's fee. It is appellant's contention that according to SCR 1.040(4), the contempt action arising from non-payment of the public defender's fee, should have been heard by the same district judge who presided over the initial charge which resulted in the imposition of the fee, or if that judge were not available a proper successor judge.

We agree with appellant on this point. SCR 1.040(4)(c) clearly states that, "[i]n the absence of good cause to the contrary, all matters connected with a pending or supplemental proceeding shall be heard by the judge to whom the proceeding was originally assigned." While there is an exception to this rule when the judge conducting the contempt proceeding is a successor judge, it is not applicable in the present case because Judge Ray was not a successor judge.

The language of SCR 1.040(4)(c) is not obscure. It means that in every district court, any supplemental proceeding—such as contempt sanctions to collect a public defender fee—shall be heard by the judge to whom the proceeding was originally assigned. In the case at bar, regardless of how the previous traffic case came to be on the felony examining division docket, absent a finding of good cause to the contrary, the public defender fee was to be heard by the judge who imposed it in the first place, or a proper successor judge.

In *Richmond v. Commonwealth*, Ky., 637 S.W.2d 642 (1982), the issue raised before this Court was whether a judge's power to issue a search warrant was limited to the district in which he or she was elected. We held that a legally elected or appointed district judge has the authority to act throughout the Commonwealth. However, that authority is "subject to the administrative authority of the respective chief judges and the Chief Justice and subject to the rule-making power of the Supreme Court." *Id.* at 646. In *Richmond*, unlike the case at bar, there was no statutory or court rule impediment to the exercise of authority to issue search warrants. In the case at bar, SCR 1.040(4)(c) expressly governs the placement of supplemental proceedings and therefore distinguishes it from *Richmond*.

■ The Commonwealth has argued, both in its brief and during oral argument, that the fact that the district judge had before him a defendant whose record included eight bench warrants constituted good cause. The argument being that, based on respondent's past record it could readily be assumed that she would not appear for the matter had the judge scheduled the proceeding to be held at a later date.

If, in fact, the only two options available to Judge Ray were to hold the proceeding or to allow appellant to leave the courtroom of her own volition with eight outstanding bench warrants, we would agree that good cause was present. However, there were other options available to the judge. The presiding district judge could have very easily had a bailiff or sheriff escort appellant to the appropriate division, where a contempt order could have been issued by the judge who issued the bench warrants or at the very least a proper successor judge. Failing that, appellant could have been remanded to jail and taken to Division 101 on the next court day. That being the case, we can find nothing in the record constituting good cause or any reference by the district judge to a finding of good cause, we therefore reverse.

## II. CHIEF JUDGE'S ORDER

■ In August 1995, the Chief District Judge of Jefferson County entered an order providing that, in cases of instant appointments, judges are to grant continuances upon request of counsel for "more time to prepare the case." During the district court proceeding, appellant's appointed counsel advised Judge Ray of the existence and terms of the order entered by the Chief District Judge, but to no avail. Appellant argues before this Court that the District Judge was bound to

obey the administrative order of the Chief District Judge. We disagree with appellant on this issue. Although SCR 1.040(3)(a) allows the Chief District Judge to prepare "rules" as required "to expedite and facilitate the business of the court," the "standing order" involved here exceeds that authority.

SCR 1.040(3) contemplates the Judge supervising administrative matters, however, the order in this case addresses the legal business of the court. The Chief Judge, being this Court's delegate, has considerable discretion in administrative decisions, however no other District Judge has the authority to "bind the hands" of another District Judge by issuing any order which limits the discretionary ruling of another judge. The granting of a continuance has long been left to the sound discretion of the trial court. It is fundamental for a judge to have the right to decide when it is appropriate to grant a continuance in any given case. *Sanders v. Commonwealth*, Ky., 269 S.W.2d 208 (1954); *Knuckles v. Commonwealth*, Ky., 261 S.W.2d 667 (1953).

We do not find it necessary to delineate within this opinion what the Chief Judge is permitted to do administratively. Suffice it to say any local rules placed into effect by the Chief Judge must be in accordance with SCR 1.040 and consistent with the Rules of Civil Procedure, Rules of Criminal Procedure, and Rules of the Supreme Court. RCr 9.04 clearly states that the authority to grant a continuance is within the discretion and power of each judge. Therefore any "rule" interfering with that discretion exceeds its scope.

This Court does not find persuasive the argument put forth by appellant and would affirm the Circuit Court on this issue.

For the reasons stated in Section I of this opinion the decision of the Circuit Court is reversed.

LAMBERT, and STUMBO, JJ., concur.

JOHNSTONE, J., concurs in result only, and files a separate concurring opinion.

WINTERSHEIMER, J., joins this concurring opinion.

COOPER, J., files a separate opinion in which he concurs with Part II of the majority opinion and dissents from Part I.

GRAVES, J., joins this opinion, concurring in part and dissenting in part.

I concur with Part II of the majority opinion, but must respectfully dissent from Part I thereof.

Appellant had ignored eight bench warrants issued for her to appear and show cause why she should not be held in contempt of court for also ignoring an order issued by a judge of the Jefferson District Court that she pay a $200.00 public defender's fee. Having finally obtained her presence in the Jefferson District Court, Judge Ray proceeded with the show cause hearing, found Appellant to be in civil contempt of court, and sentenced her to thirty days in jail. Appellant does not assert that she was denied the right to present a defense at the show cause hearing, or even that she had a defense. She only claims that the show cause hearing was held by the wrong judge, an objection she did not raise during the district court proceedings against her. This argument was first raised during the appeal to the Jefferson Circuit Court. Remarkably, this unpreserved and seemingly quixotic argument has prevailed, and we now reverse the Jefferson Circuit Court, but do not remand to the Jefferson District Court for a new hearing before the correct judge, whomever he or she might be. The reason, of course, is that Appellant has long since served her thirty days and presumably has no interest in the outcome of this dispute between the public defender's office and Judge Ray.

Judge John D. Carroll, one of the most brilliant and experienced jurists ever to sit on our highest court, had this to say in a similar case:

The Jefferson circuit court is composed of seven branches or divisions, presided over by seven judges; six of them having civil jurisdiction and one criminal jurisdiction. But these seven divisions constitute only one court, namely, the Jefferson circuit court, and these seven judges merely preside over divisions of that court. A

contempt against the authority of any of these judges or courts would be a contempt against the authority of the Jefferson circuit court, and any of the judges or any of the courts would have jurisdiction to proceed against any person guilty of a contempt against the authority of any of the judges or any of the courts composing the Jefferson circuit court, although the contempt might not have been committed against the authority of the particular judge or particular court in which the proceeding for contempt was instituted and heard. It is therefore not material whether the particular contempt here in question was committed by Melton against the authority of Judge Field or the division of the court presided over by Judge Field, because, if it was a contempt against the authority of any of the other judges or any of the other courts, Judge Field would have jurisdiction to hear and determine the contempt proceeding.

*Melton v. Commonwealth,* 160 Ky. 642, 170 S.W. 37, 39 (1914).

Supreme Court Rule 1.040(4)(c), which is the cornerstone of the majority opinion, provides as follows:

> In the absence of good cause to the contrary, all matters connected with a pending or supplemental proceeding shall be heard by the judge to whom the proceeding was originally assigned.

The obvious intent of this rule is to avoid a circumstance where one judge would hear part of the evidence in a case and another judge would hear the rest. The record in this case does not tell us which of the twenty-three judges of the Jefferson District Court entered the initial order requiring payment of the public defender's fee, or which judges (presumably more than one, since the judges are regularly rotated from one division to another) issued the eight bench warrants. Since the issue was not raised during the contempt hearing held by Judge Ray, there is not even proof that the original order was *not* issued by Judge Ray, himself. Regardless, the issue heard at the contempt hearing (had Appellant paid the public defender fee and, if not, why not?) was a different issue than the one already decided by the unidenti-

fied original judge (what was a reasonable fee and could Appellant afford to pay it?). Appellant does not explain what advantage might have inured to her if she had been escorted around the Hall of Justice until the previous, unidentified judge was found, so that he or she could have been apprised of the same information as was Judge Ray, *i.e.,* the fee had not been paid and Appellant had no defense to present.

Finally, contrary to the argument advanced by Appellant and embraced by the majority of this Court, SCR 1.040(4)(c) neither states nor implies that if the judge who heard the original cause is unavailable, it shall be heard by a "successor judge," presumably whomever has been rotated into the traffic division on the day Appellant was finally brought to court. Why would that judge be in a better position to hear and decide this case than any other judge of the Jefferson District Court, *e.g.,* Judge Ray?

In the absence of any proof of the identity or availability of the judge who issued the original payment order (assuming it was not Judge Ray), I am unable to conclude that Judge Ray was proceeding outside his authority or in the absence of good cause. But even if that were not so, the argument that Judge Ray was without authority to preside over Appellant's case could not be raised for the first time on appeal. *Cf. Bussell v. Commonwealth,* Ky., 882 S.W.2d 111 (1994), *cert. denied,* 513 U.S. 1174, 115 S.Ct. 1154, 130 L.Ed.2d 1111 (1995); *Crane v. Commonwealth,* Ky., 833 S.W.2d 813 (1992), *cert. denied,* 506 U.S. 1069, 113 S.Ct. 1020, 122 L.Ed.2d 167 (1993). I would affirm this case in all respects.

GRAVES, J., joins this opinion, concurring in part and dissenting in part.

I agree with the majority's analysis regarding whether a District Judge may employ the contempt power to punish the violation of another judge's order entered in a different division under the facts presented, but respectfully disagree that the judge can disregard an order of the Chief District Judge.

In a multi-judge district, the Chief Judge is the delegate of this Court. We have outlined the duties and responsibilities of this position in SCR 1.040(3). Our rule mandates that the Chief Judge "supervise the administrative business of the court." SCR 1.040(3)(g). In discharging those duties, a responsibility falls upon the Chief Judge to coordinate and interface with the many components that make up our justice system. One of the primary purposes of the Judicial Article was to provide uniformity, not only throughout the Court of Justice, but also in multi-judge districts and circuits. Achieving this purpose benefits the public, as well as the attorneys who only have to learn one set of rules and procedures in a particular district or circuit, not as many sets as there are individual judges. Being elected by his or her peers, the Chief Judge discusses proposed rules and procedures with the other judges in each particular district. It would be unusual for a Chief Judge to enact into local practice any procedure without the consent or consensus of his or her colleagues.

What the Supreme Court giveth, the majority opinion taketh away. The authority delegated to the Chief Judges of this Commonwealth by the provisions of SCR 1.040(3) is patently broad enough to encompass the order at issue in this case. Rather than empowering the Chief Judge to be an effective manager and administrator in his or her district consistent with the authority set out in the rule, I fear we hasten a return to the days plagued by inconsistency and a lack of uniformity. The public, the bench, and the bar deserve better.

WINTERSHEIMER, J., joins this concurring opinion.